**6**

**J. RUSSELL CUNNINGHAM, SBN 130578**
**TALVINDER S. BAMBHRA, SBN 230907**
**BENJAMIN C. TAGERT, SBN 330242**
**DESMOND, MANNING, LIVAICH & CUNNINGHAM**
1830 15th Street
Sacramento, California 95811
Telephone: (916) 443-2051
Facsimile: (916) 443-2651

Attorneys for Ethan J. Birnberg
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| In re:<br><br>GARNER ROOFING, A CALIFORNIA CORPORATION,<br><br>Debtor. | Case No.: 24-24695-B-7<br>Chapter 7<br><br>DML-31<br><br>Date: September 22, 2026<br>Time: 11:00 a.m.<br>Place: 501 "I" Street, 6th Floor<br>Courtroom 32<br>Sacramento, CA 95814 |

**MOTION TO APPROVE SETTLEMENT AGREEMENT**

ETHAN J. BIRNBERG ("Trustee") hereby moves for an order approving his settlement agreement ("Agreement") with BLACK OLIVE CAPITAL, LLC ("Black Olive"). In support thereof, it is represented that:

**JURISDICTION & BACKGROUND**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The relief sought is appropriate and proper under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.

2. On October 18, 2024, the above-captioned bankruptcy case was commenced by a voluntary Chapter 7 petition filed on behalf of GARNER ROOFING, INC. ("Debtor"), by its principal, RICHARD WALTON ("Walton"). The Trustee is the duly appointed trustee for the Debtor's estate ("Bankruptcy Estate").

3. On November 19, 2024, a money judgment ("Monroe County Judgment") was entered by a New York state court in favor of Black Olive and against (1) the Debtor; and (2) Walton, Infinite Energy Home Services, Inc., Prestige Investments Worldwide, LLC, Infinite Diesel Performance, Inc., and Tributary Point Drive, LLC (collectively "Walton Parties").

4. On January 8, 2025, Black Olive applied to a California state court for entry of the Monroe County Judgment as a sister state judgment. Conforming abstracts of judgment were recorded in El Dorado County on June 23, 2025, and Sacramento County on June 27, 2025.

5. On March 27, 2025, the Trustee commenced an adversary proceeding ("Walton AP"), by filing a complaint seeking, among other things, avoidance and recovery of financial transfers used by the Walton Parties to purchase, maintain and service debt secured by real property in Sacramento County and El Dorado County (collectively "Subject Properties"). Conforming notices of pending action for the Walton AP were recorded in Sacramento County on March 28, 2025, and El Dorado County on April 9, 2025.

6. The Subject Properties consist of: (a) 14869 Auburn Summit Drive, Folsom, Sacramento County, CA ("Folsom Property"); (b) 4253 Sunset Lane, Shingle Springs, El Dorado County, CA ("Shingle Springs Property"); (c) 12171-12178 Tributary Point Drive, Rancho Cordova, Sacramento County, CA ("Rancho Cordova Property"); and (d) 1946 Shoreview Drive, El Dorado Hills, El Dorado County, CA ("El Dorado Hills Property"). On October 1, 2025, in the Walton AP, judgment was entered in favor of the Trustee, who recovered each of the Subject Properties as proceeds of the avoided transfers.

7. Pursuant to orders granting DNL-6 and DNL-26, in the Debtor's parent case, the Trustee sold the Folsom Property and Shingle Springs Property, free and clear of Black Olive's abstracts of judgment, netting $135,700.58 ("Folsom Proceeds") and $642,627.37 ("Shingle Springs Proceeds"), respectively.

8. By way of proof of claim 31-1 ("POC 31-1"), Black Olive asserts a $258,067.22 claim based on a Revenue Purchase Agreement ("RPA") executed by Walton on behalf of Prestige Investments and "the entities listed on Appendix A." Those entities include the Debtor and each of the other Walton Parties. The RPA provides for the "purchase and sale of future receivables" and a blanket security interest against the Debtor. Black Olive asserts: (a) a judgment lien against the Subject Properties, including the Folsom Proceeds and Shingle Springs Proceeds (collectively "Sale Proceeds"), by way of the recorded abstracts of judgment; and (b) a voluntary lien, perfected by a June 12, 2024, UCC-1 filing, against the proceeds of deposit accounts, accounts receivable, general intangibles and other personal property administered by the Trustee (collectively "On Hand Funds").

9. By Adversary Proceeding No. 26-02093 ("Black Olive AP"), the Trustee now seeks declaratory relief (clearing title to the Subject Properties, Sale Proceeds and On Hand Funds), transfer avoidance (as to the RPA and security agreement), stay violations, and disallowance of POC 31-1.

10. The Trustee presently holds $1,106,487.66, consisting of $778,327.95 aggregate of Sale Proceeds and $328,159.71 On Hand Funds. Filed Claims (excluding duplicates and those paid post petition) aggregate $3,468,308.07, consisting of $416,522.22 secured, $130,739.23 priority and $2,921,046.62 general unsecured. In addition to Black Olive, Mulligan Funding, LLC ("Mulligan Funding") by its proof of claim 1-2 ("POC 1-2"), asserts a blanket security interest against the On Hand Funds to secure a $158,455.00 claim.

## TERMS OF AGREEMENT

11. Subject to Bankruptcy Court approval, the Trustee and Black Olive have entered into the Agreement, the essential terms of which are:

(a) Black Olive shall waive all claims of lien that have been asserted or could be asserted against the Subject Properties, Sale Proceeds and On Hand Funds, including by way of the abstracts and security agreement;

(b) Black Olive's POC 31-1 shall be allowed in the amount of $258,067.22 as a timely filed general unsecured non-priority claim against the Debtor's estate;

(c) The Black Olive AP shall be dismissed with prejudice, with the parties bearing their own attorney fees and costs; and

(d) The Parties will exchange broad releases and waive unknown claims.

12. It is the Trustee's opinion that the Agreement is fair, equitable and in the best interests of the estate.

**BASIS FOR RELIEF**

Federal Rule of Bankruptcy Procedure 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." When deciding whether a proposed compromise under Federal Rule of Bankruptcy Procedure 9019 should be approved, the court should consider whether the settlement is fair and equitable. *In re Planned Protective Service, Inc.*, 130 B.R. 94, 96 (Bankr. C.D. Cal. 1991). In evaluating the fairness, reasonableness and adequacy of the proposed compromise, courts consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In Re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988), citing *In Re A & C Properties*, 784 F.2d 1377, 1381, cert. denied 107 S.Ct. 189 (1986).

The Court should not conduct "an exhaustive investigation or a mini-trial on the merits," *Spirtos v. Ray (In re Spirtos)*, 2006 Bankr. LEXIS 4894 at 32 (B.A.P. 9th Cir. 2006), but instead should simply "'canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness[.]'" *Id.* (quoting *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004)). While the proponent of a settlement has the burden to show that it is fair and equitable, a court generally should give deference to a trustee's exercise of business judgment. *Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.)*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003).

The Court should approve the proposed Agreement because it is fair and equitable, and in the best interests of the Debtor's estate.

///

**1. The probability of success in the litigation.**

This factor supports approval of the Agreement. While it is likely that the Trustee will prevail as to the stay violation claim (because the Monroe County Judgment was entered and sister state application was filed post-petition), it is difficult to predict the outcome of his challenge on the merits to the RPA. Litigation on the merits would require a determination as to whether it is a true sale, which turns on resolution of 3 issues: (1) whether the economic risk falls squarely on the purported seller as the RPA allowed Black Olive to collect future receivables by a sweep of "all" of the purported seller's accounts and not a particular receivable account; (2) whether there is a definite term that can be calculated from the amount owed and the amount of the payments, and required the purported seller to continue to pay regular installments until the full amount is collected; and (3) whether failure to collect on a sweep of the purported seller's accounts would result in an acceleration of the term and collection of the entire amount without notice. See *In re Shoot the Moon, LLC,* 635 B.R. at 813-815 (Bankr. D. Mont. 2021) and *In re Crosby Marine Transportation, LLC,* 2026 WL 1765197 (Bankr. E.D. La. 2026). If the Trustee does not prevail as to any one of those 3 issues, then the On Hand Funds will remain encumbered by the blanket security interests asserted by Black Olive and Mulligan Funding.

**2. The difficulties to be encountered in collection.**

This factor is neutral because the Trustee is in defensive position as to the Subject Properties, Sales Proceeds and On Hand Funds.

**3. The complexity, expense, and inconvenience of the litigation involved.**

This factor supports approval of the Agreement because further litigation would be expensive and time consuming.

**4. The paramount interest of creditors.**

This factor supports approval the Agreement. The court may give weight to the opinions of the trustee, the parties, and their attorneys. *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986). It is the Trustee's opinion that the Agreement is in the best interests of the estate. The practical effect of the Agreement is to: (a) clear title to $778,327.95 Sale Proceeds; (b) reduce

from $416,522.22 to $158,455.00 the liens asserted against the $328,159.71 On Hand Funds; and (c) increase from $2,921,046.62 to $3,179,113.84 the general unsecured creditor pool.

**WHEREFORE**, the Trustee respectfully requests that the motion be granted and for such other and further relief as is necessary and proper.

Dated: August 19, 2026 **DESMOND, MANNING, LIVAICH, & CUNNINGHAM**

By: /s/ J. RUSSELL CUNNINGHAM
**J. RUSSELL CUNNINGHAM**
Attorneys for Ethan J. Birnberg
Chapter 7 Trustee